HEARD APRIL TERM, 1877.

THE STATE, *ex rel.* DUNTON, *vs.* COBB.

The Legislature may constitutionally provide that the poll tax of any year shall be applied to the payment of past due school claims against the County.

There is nothing in § 3, Article 9, of the Constitution of the State which prohibits the General Assembly from providing for the payment of deficiencies out of other sources of income than a deficiency tax levied under that Section.

The poll tax is imposed by the Constitution itself, and the limit within which it may be applied is to be found in the term "educational purposes," as used in that instrument.

This was a petition by L. M. Dunton as relator against A. L. Cobb, County Treasurer, for a writ of mandamus to compel the respondent to pay certain school claims held by the relator.

The points of law decided in the case sufficiently appear in the opinion of the Court.

*Jones & Mower*, for relator.

*Suber & Caldwell*, contra.

August 15, 1877. The opinion of the Court was delivered by

WILLARD, C. J. The only question in this case is as to the constitutionality of certain provisions of an Act entitled "An Act to

provide for the payment of past due school claims in the several Counties of this State," approved March 3, 1874, (15 Stat., 565). The Act provides for ascertaining the amounts due by the respective Counties for school claims up to November 1, 1873, and sets apart a fund, consisting in part of receipts in the offices of the County Treasurers on account of the poll tax, for the payment of such school claims. The clause to which objection on the ground of unconstitutionality is made is the following, at the close of Section 1 of the Act, viz.: "*Provided*, That all school claims issued prior to the first day of November, 1872, shall be first paid as prescribed by this Act." The point of objection is that the Act prefers in the order of payment out of funds derived from current poll taxes a class of school claims matured before November 1, 1873.

It is contended that the Constitution intended that current receipts from the poll tax shall be applied to current demands properly chargeable against it; at all events, that the fund derived from that source shall not be appropriated by the Legislature to past due claims so as to postpone the payment of more recent claims of that class. The only clauses of the Constitution pointed out as interfering with the effect claimed for this provision of the Act are Sections 2 and 3, Article IX, and Section 5, Article X. Section 2, Article IX, provides as follows: "The General Assembly may provide annually for a poll tax not to exceed one dollar on each poll, which shall be applied exclusively to the public school fund." Section 5, Article X, provides that "the General Assembly shall levy at each regular session after the adoption of this Constitution an annual tax on all taxable property throughout the State for the support of the public schools, which tax shall be collected at the same time and by the same agents as the general State levy, and shall be paid into the Treasury of the State. There shall be assessed on all taxable polls in this State an annual tax of one dollar on each poll, the proceeds of which tax shall be applied solely to educational purposes."

It is clear that there is nothing contained in the provisions just recited limiting the appropriations made by the Legislature, provided the proceeds of the poll tax are not diverted from the object intended by the Constitution. This object is defined in Section 2, Article IX, by the declaration that such fund shall be applied exclusively to "the public school fund," and in Section 5, Article X, by the declaration that it shall be applied solely for "educational

purposes." Payment of past due claims is no less an application to educational purposes than of current demands. Nor is there any reason to be drawn from the above recited provisions why the public school fund should not be applied to debts incurred for educational purposes in the past as well as for current obligations. The duty of the State to pay its past indebtedness incurred for educational purposes rests on higher ground than its duty to maintain its schools in the present and future. The latter rests on benevolence and the former on justice.

It is argued that the intent of the Constitution was to maintain the school system as a means of education, and withdrawing the school funds from that application and, devoting them to past indebtedness of the same class is a virtual defeat of that object of the Constitution. There are no expressions in the Constitution from which such a conclusion can be drawn. It is a mere speculative opinion, as apt to be derived from the peculiar tendencies of the mind attempting to construe the Constitution itself as from that instrument. We find no ground for such a conclusion. To hold that past indebtedness cannot be preferred is equivalent to holding that the Legislature can make no specified appropriation of the school fund, for, clearly, if they can give any specific direction whatever to that fund, they can prefer past indebtedness, for it is of the very essence of the right to make specific appropriations to prefer one legal demand to another in the order of payment.

It is also contended that the provisions of Section 3, Article IX, preclude the application by the Legislature to the payment of past indebtedness of any funds derived from the annual tax levy, and that the proceeds of the poll tax is to be classed in this respect with other sources of income derived from an annual tax. That Section provides that "the General Assembly shall provide for an annual tax sufficient to defray the estimated expenses of the State for each year; and whenever it shall happen that such ordinary expenses of the State for any year shall exceed the income of the State for such year, the General Assembly shall provide for levying a tax for the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year, together with the estimated expenses of the ensuing year." It is contended, as the effect of this Section, that deficiencies of a past year can be paid from no other source than a deficiency tax levied under this Section; but

this is in conflict with the expressed intent of the Section. The deficiency tax is to be levied only where other sources of income are deficient, clearly implying power to provide for the payment of deficiencies from any source of income available within the control of the State.

A more serious question arises under the provisions of Section 3, Article IX. Assuming that the annual tax "to defray the estimated expenses of the State for each year" can only constitutionally be used to provide the means of meeting current expenditures, so that the proceeds of such tax received in any year cannot be applied to the indebtedness of a past year, at all events unless more than sufficient for the direct purpose for which it was raised, is the amount annually derived from the poll tax to be regarded as subject to the same limitation? In the first place, the poll tax is levied under a different Section than that just mentioned, namely, Section 2, Article IX, and Section 5, Article X. In the next place, the tax provided for in Section 3, Article IX, is a variable tax, to be fixed in amount according to estimates of what will be required for the current expenses of the government, while the poll tax is fixed by the Constitution and the laws passed under it at one dollar per poll, and can only vary from year to year in point of productiveness. They are, therefore, of different natures. Finally, if it be conceded that the annual tax under Section 3, Article IX, cannot be applied to deficiencies of a past year, it clearly results from the operation of Section 4, Article IX, which is as follows: "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object such tax shall be applied." A law passed under Section 3, Article IX, levying an annual tax to pay the estimated expenses should disclose that object of the tax to which Section 4 would at once apply, by way of devoting the proceeds of such tax to the particular purpose constituting that object. On the other hand, Section 5, Article X, is to be regarded as in itself the actual levy of the poll tax, thus making it the duty of the officers charged with making out the assessment to insert therein the sum charged to each person as a poll tax who is liable to pay the same, and no further legislation was needed or contemplated for that purpose.

Thus it appears that while the provisions of Section 4 properly apply to and act upon all taxes imposed by the General Assembly, yet, as the poll tax is imposed by the Constitution itself, it cannot

be extended to reach to that case unless its construction is to be carried beyond its expression. There is no ground for so doing, for the reason on which Section 4 rests does not apply to the case where the Constitution has undertaken to define that object itself, and has left full liberty of appropriation to the Legislature within the limits of that defined object. That object is defined by the Constitution on the creation of a school fund, not for any limited purpose, such as the payment of the expenses of any one year, but for all purposes properly designated "educational."

The peremptory *mandamus* issued by the Circuit Court was allowed on the ground that the provisions of the Act under consideration were in conflict with the Constitution, and it must be set aside and the petition for *mandamus* dismissed.

*McIver*, A. J., concurred.